E. C. C. Retirement Village, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued January 29, 1985, before Judges DOYLE and BARRY and Senior Judge KALISH, sitting as a panel of three.

*George E. Christianson*, with him, *Philip B. Ebersole, Christianson-Meyer*, for petitioner.

*Bruce G. Baron*, Assistant Counsel, for respondent.

OPINION BY JUDGE BARRY, May 14, 1985:

Petitioner, E. C. C. Retirement Village, is appealing an order of the Department of Public Welfare (DPW) declaring thirty-four of its residents ineligible for medical assistance.

It is undisputed that all of the residents in question entered into identical contracts with petitioner prior to 1975. Basically, the residents agreed to transfer to petitioner all of their present and future property in exchange for complete care and maintenance during the rest of their natural lives. In a letter dated April 11, 1983, DPW informed petitioner of its determination that these contracts were life-care contracts, and that pursuant to 55 Pa. Code §181.23, the residents were ineligible to receive medical assistance. Petitioner appealed this determination. Its appeal was upheld

by a hearing officer on July 12, 1983, on the basis that the contracts were not life-care in nature. This decision, however, was reversed on October 24, 1983, by the Director of the Office of Hearings and Appeals. This appeal followed.

It is petitioner's primary contention that the admission agreements signed by its residents prior to 1975 are not life-care contracts. Petitioner relies on the fact that in these agreements it pledges to provide maintenance to the residents *unless* they are dismissed or voluntarily decide to leave its premises. Clearly, petitioner argues, since these contracts do not contemplate an absolute obligation on its part to provide care to its residents for their entire lives, they cannot be construed as life-care contracts. We disagree. Petitioner's argument completely ignores 55 Pa. Code §191.23(b)(1). This regulation, upon which the DPW's decision is based, provides:

(1) *Contracts guaranteeing maintenance.* The typical contract of this type shows that at the time the person entered the institution he transferred to the institution all of his assets and agreed to transfer to the institution all property that he might ever acquire at a later date. In return, the institution agreed to furnish him with complete maintenance either for life *or for a period specified in the contract,* or for a period which can be determined from the contract. A person living in an institution who has a contract with the institution under which he is entitled to maintenance *for a period which has not yet expired,* is eligible for assistance only if the following occur:

(i) If the institution claims it is financially unable to comply with the terms of the contract. Evidence satisfactory to establish this must be presented by the governing body of the insti-

tution in accordance with §181.24(b) (relating to procedure). (Emphasis added.)

Since petitioner makes no claim that it is unable to comply with the terms of the contract, its residents are clearly ineligible for medical assistance as long as they remain residents at petitioner's facilities.

Petitioner next argues that we should apply the doctrine of estoppel in order to prevent DPW from applying this regulation. It points out that DPW has provided benefits to these people for many years and it maintains that shifting this burden onto its shoulders at this time would create an obvious financial uncertainty and instability. Petitioner apparently misunderstands the doctrine of equitable estoppel for it is well established that "a finding of estoppel must always be predicated on some detrimental reliance by the person asserting the doctrine." *Card v. School Employes' Retirement Board,* 83 Pa. Commonwealth Ct. 602, 609, 478 A.2d 510, 514 (1984). There is absolutely no evidence before this Court to indicate that petitioner detrimentally relied on DPW's failure to properly enforce its regulations.

Lastly, petitioner challenges the authority of the Director of Office of Hearings and Appeals to unilaterally issue a decision reversing the hearing officer without taking additional testimony. DPW points out that the Director's actions are in compliance with 55 Pa. Code §275.4(h)(4)(i) which provides in part:

(i) The Director of Office of Hearings and Appeals will affirm, amend, reverse, or remand a Hearing Examiner's decisions. Reversal by the Director will be confined to matters of law and established departmental policy; . . . If the decision of the Hearing Examiner is reversed, the reasons for such reversal will be provided to the appellant in writing by the Director of the Office of Hearings and Appeals.

Petitioner also argues that the Director's order of reversal is so inconsistent and vague as to constitute a denial of due process. We disagree. The order adequately explains that pursuant to 55 Pa. Code §181.24 (b) petitioner's residents are not eligible for medical assistance.

Affirmed.

ORDER

Now, May 14, 1985, the order of the Department of Public Welfare dated October 24, 1983, at No. 23-83-298 is hereby affirmed.

Judge WILLIAMS, JR. did not participate in the decision in this case.